JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Cindee Porter

**DEFENDANTS**

CSL Behring LLC
Kimberly Golden

**(b)** County of Residence of First Listed Plaintiff  Delaware County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Montgomery County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian C. Farrell, Esq., Console Mattiacci Law, LLC
1525 Locust St., 9th Fl., Philadelphia, PA 19102 (215) 545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §12101, et seq.

Brief description of cause:
Plaintiff was discriminated against because of her disability and retaliated against for requesting accommodations

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
09/08/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Media, PA _____

Address of Defendant: _____ 1020 1st Avenue, King of Prussia, PA 19406 _____

Place of Accident, Incident or Transaction: _____ 1020 1st Avenue, King of Prussia, PA19406 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 09/08/2021 _____ _____ 319145

*Attorney-at-Law / Pro Se Plaintiff* — *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Brian C. Farrell _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 09/08/2021 _____ _____ 319145

*Attorney-at-Law / Pro Se Plaintiff* — *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**<u>CASE MANAGEMENT TRACK DESIGNATION FORM</u>**

|  |  |  |
|---|---|---|
| Cindee Porter | : | CIVIL ACTION |
| v. | : | |
| CSL Behring LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.       (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.             (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                     (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                        (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| | | |
|---|---|---|
| 09/08/2021 | | Plaintiff, Cindee Porter |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | farrell@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| _____ : | |
| **CINDEE PORTER** : | **C.A. NO.:** |
| : | |
| **Plaintiff** : | |
| **v.** : | |
| : | **JURY TRIAL DEMANDED** |
| : | |
| **CSL BEHRING LLC** : | |
| : | |
| and : | |
| : | |
| **KIMBERLY GOLDEN** : | |
| : | |
| **Defendants** : | |
| _____ : | |

## COMPLAINT

### I.      PRELIMINARY STATEMENT

Plaintiff, Cindee Porter ("Plaintiff"), through her undersigned counsel, files this Civil Action Complaint against her former employer, Defendant CSL Behring LLC ("Defendant CSL"), and her former supervisor with Defendant CSL, Defendant Kimberly Golden ("Defendant Golden") (collectively, "Defendants"). Plaintiff asserts discrimination and retaliation claims against Defendants under the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.*, ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks all available damages, including economic loss, compensatory, and punitive damages, together with all other relief under applicable federal and state law as this Court deems appropriate.

### II.      PARTIES

1.      Plaintiff, Cindee Porter ("Plaintiff"), is an individual and citizen of Pennsylvania, residing therein in Media, Pennsylvania.

2.      Defendant, CSL Behring LLC ("Defendant CSL"), is a Delaware corporation registered and licensed to do business in the Commonwealth of Pennsylvania, maintaining a principal place of business at 1020 1st Avenue, King of Prussia, Pennsylvania 19406.

3.      Defendant, Kimberly Golden ("Defendant Golden"), is an individual and Director – Human Resources Business Partner with Defendant CSL. Defendant Golden makes her principal place of business at 1020 1st Avenue, King of Prussia, Pennsylvania 19406.

4.      Defendant CSL is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

5.      At all times material to this action, Defendant CSL employed more than 15 employees.

6.      At all times material to this action, Defendant CSL was an employer within the meaning of the ADA and PHRA.

7.      At all times material to this action, Plaintiff was an employee of Defendant CSL within the meaning of the ADA and PHRA.

8.      At all times material to this action, Defendant CSL acted by and through its authorized agents, servants, contractors, or employees acting within the course and scope of their employment with Defendant CSL and in furtherance of its business.

**III.      JURISDICTION AND VENUE**

9.      The causes of action set forth in this Complaint arise under the ADA, as amended, 42 U.S.C. §12101, *et seq.* (Count I-II); and the PHRA, 43 P.S. §951, *et seq.* (Counts III-V).

10.      The District Court has subject matter jurisdiction over Counts I-II (ADA) pursuant to 28 U.S.C. §1331.

11.     The District Court has supplemental jurisdiction over Counts III-V (PHRA) pursuant to 28 U.S.C. §1367.

12.     Defendants are subject to the personal jurisdiction of this Court because, among other things, the case arises out of or relates to the contacts of Defendants with the Commonwealth of Pennsylvania, and the contacts of Defendants are continuous and systematic such that Defendants are at home in the Commonwealth of Pennsylvania.

13.     Venue is proper under 28 U.S.C. § 1391(b).

14.     On or about October 18, 2019, Plaintiff dual filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination and retaliation alleged herein.  Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the PHRC Charge of Discrimination, with minor redactions for purposes of electronic filing of confidential and personal identifying information.

15.     On or about February 20, 2020, Plaintiff dual filed an amended PHRC Charge of Discrimination with the PHRC and EEOC. Attached hereto, incorporated herein, and marked as Exhibit "B" is a true of correct copy of Plaintiff's amended PHRC Charge of Discrimination, with minor redactions for purposes of electronic filing of confidential and personal identifying information.

16.     On or about June 11, 2021, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue. Attached hereto and marked as Exhibit "C" is a true and correct copy of that Notice, with minor redactions for purposes of electronic filing of confidential and personal identifying information.

17.     Plaintiff has complied with all administrative requirements for the institution of this civil action.

## IV.     FACTUAL ALLEGATIONS SUPPORTING CLAIMS

18.     Plaintiff was employed by Defendant CSL from on or about September 5, 2018 until on or about October 4, 2019.

19.     During her employment, Plaintiff held the position of Senior Human Resources Business Partner within Defendant CSL's Global Research and Development organization.

20.     In this role, Plaintiff reported to Defendant Golden, Director – Human Resources Business Partner. Defendant Golden reported to Andrea Resch ("Resch"), Senior Director – Human Resources Department.

21.      On or about February 12, 2019, Plaintiff received a positive mid-year performance review from Defendant Golden.

22.     On or about March 30, 2019, Plaintiff fell and broke her right wrist.

23.     Plaintiff's broken wrist rendered her disabled under the ADA and PHRA because it substantially impaired one or more of her major life activities and/or caused her to be regarded as disabled by Defendants.

24.     On or about March 31, 2019, Plaintiff informed Defendant Golden of her broken wrist.

25.     On or about April 1, 2019, Plaintiff saw an orthopedic doctor and had her right arm placed in a cast. The orthopedic doctor informed Plaintiff that he would decide whether surgery was necessary at Plaintiff's follow-up appointment two weeks later.

26.     On or about April 2, 2019, Plaintiff requested and was granted a reasonable accommodation in the form of permission to work from home until her follow-up appointment with her orthopedic doctor.

27.     Following the injury, Plaintiff experienced continued physical strain resulting from her broken wrist. Plaintiff repeatedly informed Defendant Golden of the same.

28.     On or about April 8, 2019, Defendant Golden unjustly criticized Plaintiff's performance for the first time during a telephone call. Further, Defendant Golden unfairly questioned the validity of Plaintiff's accommodation request, telling Plaintiff that she knew of "another employee" who had fallen and broken both wrists, had casts, and returned to the office without a problem.

29.     Later that day, after speaking with her orthopedic doctor, Plaintiff informed Defendant Golden that, due to continued physical strain from working, typing, and writing with her left hand, her doctor recommended that she take a medical leave of absence until her follow-up medical appointment on April 15, 2019.

30.     Ultimately, Plaintiff remained out of work on a medical leave of absence from April 9, 2019 until May 6, 2019.

31.     During that time, Defendant Golden repeatedly pressured Plaintiff to return to work.

32.     On or about May 3, 2019, following an appointment with her orthopedic doctor, Plaintiff informed Defendant Golden that she was medically cleared to return to work beginning on May 6, 2019.

33.     Upon her return to work on May 6, 2019, Plaintiff provided Defendant Golden with a medical note from her orthopedic doctor requesting that Defendant CSL continue to grant her

the accommodation of permission to work from home. Plaintiff requested that this accommodation remain in place until her doctor could reassess her condition on June 3, 2019.

34.     While Defendants granted this request, they nonetheless continued to retaliate and discriminate against Plaintiff on the basis of her disability and prior accommodation requests.

35.     For example, later in the day on May 6, 2019, Defendant Golden assigned Plaintiff a deluge of new projects and tasks, emphasizing "the amount of work" that she had to do during Plaintiff's medical leave of absence.

36.      Defendant Golden also told Plaintiff on May 6, 2019 that Plaintiff would no longer be permitted to travel Amsterdam for a previously scheduled work trip. According to Defendant Golden, she "did not know" when Plaintiff had intended to return to work, and that with all of the work Plaintiff was returning to, Defendant Golden "figured the trip to Amsterdam would have slipped to the bottom" of Plaintiff's priorities.

37.     Defendant Golden also began to exclude Plaintiff from information and communications related to and necessary for Plaintiff to do her job.

38.     Additionally, during a May 24, 2019 telephone call, Defendant Golden:

- unjustly criticized Plaintiff's performance in a hostile and dismissive manner;

- questioned Plaintiff's attitude and whether Plaintiff was truly "engaged" with her work and assignments;

- instructed Plaintiff to return to work at the office before her June 3, 2019 doctor's appointment; and

- brazenly accused Plaintiff of exacerbating the nature of her disability.

39.     On or about June 3, 2019, Plaintiff informed Defendant Golden that her orthopedic doctor removed her cast that day, and that she intended to return to work in the office the next day.

40.     On or about June 4, 2019, Plaintiff returned to work at Defendant CSL's headquarters in King of Prussia after receiving medical clearance from her doctor to do so.

41.     Following Plaintiff's return to the office, Defendant Golden continued her campaign of discrimination and retaliation against Plaintiff.

42.     For example, on or about July 23, 2019, in a meeting with Defendant Golden and Trina Hendri ("Hendri"), Senior Director -- Human Resources, Defendants placed Plaintiff on a Performance Improvement Plan ("PIP").

43.     Plaintiff's performance did not warrant a PIP.

44.     Defendants' stated reason for Plaintiff's PIP was "performance deficiencies."

45.     The PIP was the first written documentation that Plaintiff received indicating her performance was deficient.

46.     The PIP contained false statements and mischaracterizations of Plaintiff's performance.

47.     According to Defendants, Plaintiff's PIP was scheduled to last 60 days, or until on or about September 23, 2019.

48.     Defendant CSL skipped the first step of its progressive discipline process by placing Plaintiff on a PIP.

49.     Defendants placed Plaintiff on a PIP because of her disability and/or requests for reasonable accommodations.

50.     Defendants did not assist Plaintiff in achieving the objectives set forth in the PIP and failed to provide feedback on her progress.

51.     Thereafter, on or about September 4, 2019, in a meeting with Defendant Golden, Plaintiff received an unjustified negative annual performance review.

52.     Plaintiff's performance did not warrant a negative annual performance review.

53.     Plaintiff received a negative annual performance review because of her disability and/or requests for reasonable accommodations.

54.     One week later, on or about September 11, 2019, in her written response to the negative year-end performance review, Plaintiff complained of disability discrimination and retaliation for requesting reasonable accommodations.

55.     Specifically, Plaintiff wrote:

- "I can only conclude that my negative year-end performance review is because of my recent injury (due to breaking my arm on March 30, 2019), my medical leave of absence from April 10, 2019 to May 5, 2019, and my accommodation of working from home between May 6, 2019 and June 4, 2019."

- "Coupled with the several examples of being pressured to return to work and go beyond my doctor's recommendations, I am concerned about the retaliation I experienced as a result of my injury and medical leave."

- "I do not believe that I would have received a Performance Improvement Plan or a negative year-end performance review if I had not had an injury, been out on medical leave, or requested an accommodation."

56.     Defendants did not respond to Plaintiff's written complaint of discrimination and retaliation.

57.     Defendants failed to investigate Plaintiff's written complaint of discrimination and retaliation.

58.     Defendants failed to remedy the disability discrimination and retaliation complained of by Plaintiff in her written complaint.

59.     Thereafter, on September 20 and 22, 2019, Plaintiff twice complained to Resch of disability discrimination and retaliation for seeking reasonable accommodations.

60.     Resch did not adequately respond to Plaintiff's complaints.

61.     On or about September 26, 2019, in a meeting with Defendant Golden and Resch, Defendants terminated Plaintiff's employment, effective October 4, 2019. Defendants' stated reason was that Plaintiff had not made enough progress under the PIP.

62.     Defendants' stated reason for Plaintiff's termination is a pretext for disability discrimination and/or retaliation for requesting reasonable accommodation and/or retaliation for complaining of the same.

63.     Defendants reassigned Plaintiff's job duties to less-qualified nondisabled and/or noncomplaining employees and/or employees who had not requested accommodations.

64.     Defendants terminated Plaintiff's employment because of her disability and/or requests for accommodations and/or complaints about same.

65.     Following her termination, on October 17, 2019, Plaintiff applied for an open position with Defendant CSL with the title of Senior Manager, Talent Development. Based on her review of the job description, Plaintiff determined that she was qualified for this role.

66.     On or about February 7, 2020, Plaintiff learned that Defendants had hired another candidate (Erica Brim) for the open Senior Manager, Talent Development position.

67.     Upon information and belief, Plaintiff was more qualified than Erica Brim for the open Senior Manager, Talent Development position.

68.     Defendants failed to hire Plaintiff for this position because of her disability and/or requests for accommodations and/or complaints about same.

69.     Defendants' disability discriminatory and retaliatory conduct toward Plaintiff has caused her emotional distress.

70.     Defendants' comments and conduct evidence a bias against disabled employees and/or employees that seek accommodations and/or employees that engage in protected activity.

71.     Defendant Golden aided and abetted Defendant CSL in discriminating and retaliating against Plaintiff as set forth in the paragraphs above.

### COUNT I – ADA
### (Disparate Treatment)
### Plaintiff v. Defendant CSL Behring LLC

72.     Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

73.     Plaintiff's disability was a substantial, motivating, and/or determinative factor in connection with Defendant CSL's treatment of her.

74.     By committing the foregoing acts of discrimination against Plaintiff, including, without limitation, terminating her employment and failing to hire her into an open position, Defendant CSL has violated the ADA.

75.     As a direct and proximate result of Defendant CSL's violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

76.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant CSL's discriminatory acts unless and until this Court grants the relief requested herein.

77.     Defendant CSL acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

**COUNT II – ADA**
**(Retaliation)**
**Plaintiff v. Defendant CSL Behring LLC**

78.     Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

79.     Plaintiff's requests for accommodation and/or complaints of discrimination and retaliation were a substantial, motivating, and/or determinative factor in connection with Defendant CSL's treatment of her.

80.     By committing the foregoing acts of and retaliation against Plaintiff, including, without limitation, terminating her employment and failing to hire her into an open position, Defendant CSL has violated the ADA.

81.     As a direct and proximate result of Defendant CSL's violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

82.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant CSL's retaliatory acts unless and until this Court grants the relief requested herein.

83.     Defendant CSL acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

**COUNT III - PHRA**
**(Disparate Treatment)**
**Plaintiff v. Defendant CSL Behring LLC**

84.     Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

85.     Plaintiff's disability was a substantial, motivating, and/or determinative factor in connection with Defendant CSL's treatment of her.

86.     By committing the foregoing acts of discrimination against Plaintiff, including, without limitation, terminating her employment and failing to hire her into an open position, Defendant CSL has violated the PHRA.

87.     As a direct and proximate result of Defendant CSL's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

88.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant CSL's discriminatory acts unless and until this Court grants the relief requested herein.

## COUNT IV - PHRA
### (Retaliation)
### Plaintiff v. Defendant CSL Behring LLC

89.     Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

90.     Plaintiff's requests for accommodation and/or complaints of discrimination and retaliation were a substantial, motivating, and/or determinative factor in connection with Defendant CSL's treatment of her.

91.     By committing the foregoing acts of and retaliation against Plaintiff, including, without limitation, terminating her employment and failing to hire her into an open position, Defendant CSL has violated the PHRA.

92.     As a direct and proximate result of Defendant CSL's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

93.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant CSL's retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT V - PHRA
### (Aiding and Abetting)
### Plaintiff v. Defendant Kimberly Golden

94.     Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

95.     Defendant Golden willfully and knowingly aided, abetted, incited, compelled and/or coerced Defendant CSL in the discrimination and retaliation to which Plaintiff was subjected.

96.     Defendant Golden knowingly gave substantial assistance and/or encouragement to the unlawful acts of discrimination and retaliation of Defendant CSL towards Plaintiff.

97.     Defendant Golden, by committing the foregoing acts of discrimination and retaliation, has violated the PHRA.

98.     Said violations were intentional and willful.

99.     As a direct and proximate result of Defendant Golden's violations of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein.

100.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Golden's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

## RELIEF

**WHEREFORE**, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant her the following relief

by:

(a)     declaring the acts and practices complained of herein to be in violation of the ADA;

(b)     declaring the acts and practices complained of herein to be in violation of PHRA;

(c)     enjoining and permanently restraining the violations alleged herein;

(d)     entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(e)     awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(f)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(g)     awarding punitive damages to Plaintiff;

(h)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(i)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

CONSOLE MATTIACCI LAW, LLC

By: /s/ Brian C. Farrell
Brian C. Farrell, Esquire
PA ID No. 319145
Console Mattiacci Law, LLC

1525 Locust Street, Ninth Floor
Philadelphia, PA 19102
(215) 545-7676
(215) 565-2851 (fax)
farrell@consolelaw.com
Attorney for Plaintiff, Cindee Porter

Date: September 8, 2021

Exhibit "A"

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## **COMPLAINT**

COMPLAINANT:                                    :
                                                :
**CINDEE PORTER**                               :              Docket No.
                                                :
v.                                              :
                                                :
RESPONDENTS:                                    :
                                                :
**CSL BEHRING**                                 :
                                                :
and                                             :
                                                :
**KIMBERLY GOLDEN, aider and abettor**          :
                                                :

1.  The Complainant herein is:

    Name:           Cindee Porter

    Address:        ████████ redacted
                    Media, PA 19063

2.  The Respondents herein are:

    Names:          CSL Behring ("Respondent Company"); Kimberly Golden, aider and
                    abettor ("Respondent Golden")

    Address:        1020 1st Avenue
                    King of Prussia, PA 19406

3.  I, Cindee Porter, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my disability (including history of and regarded as), and retaliation

because I complained of disability discrimination and sought reasonable accommodations for my

disability, including taking a medical leave of absence, as set forth below.

**Discrimination and Retaliation**

**A.  I specifically allege:**

[1]        I began working at Respondent Company on or about September 5, 2018.

[2]        I consistently performed my job duties in a highly competent manner.

[3]        I last held the position of Senior Human Resources Business Partner, Global Research and Development.

[4]        I reported to Respondent Kimberly Golden, Director, Human Resources Business Partner.  Golden reported to Andrea Resch, Senior Director, Human Resources, Global Research and Development.

[5]        On February 12, 2019, in a meeting with Respondent Golden, I received a positive mid-year performance review

[6]        On March 30, 2019, I fell and broke my right wrist.

[7]        On March 31, 2019, I informed Respondent Golden that I had fallen and broken my right wrist, that I was wearing a brace, and that I was working to schedule an orthopedic doctor appointment.  I requested and was granted the ability to work from home the next day, due to my injury.

[8]        On April 1, 2019, I went to the orthopedic doctor and had my right arm placed in a cast.  I was told that, at my two- (2) week follow-up appointment, the doctor would have a better idea whether I would need to undergo surgery.

[9]        On April 2, 2019, I informed Respondent Golden that my right arm had been placed in a cast.  I requested and was granted the ability to work from home until my April 15, 2019 orthopedic doctor follow-up appointment, due to not being able to drive as a result of my injury.

[10]      I experienced continued physical strain from working and typing with the cast on my right arm, and writing with my left hand, and consulted with my doctor.  I repeatedly informed Respondent Golden that I was having difficulties trying to work with the cast on my right arm and with having to write left-handed.

[11]      On April 8, 2019, in a phone call with Respondent Golden, she unjustly criticized my performance and criticized the work I completed and the updates I provided to her. Respondent Golden stated that there had been another employee who had fallen and broken both wrists, had casts, and returned to the office without a problem.  I understood Respondent Golden to be implying that I should return to work in the office instead of working from home.

[12]      On April 8, 2019, after speaking with my doctor, I informed Respondent Golden that, due to continued physical strain from working, typing, and writing with my left hand, my doctor would be writing me out of work, on a medical leave of absence, until reevaluation at my April 15, 2019 appointment.  I requested and was granted the accommodation of a medical leave of absence.

[13]      On April 9, 2019, after working a half-day, I went out of work on a medical leave of absence.  I worked to transition my projects and assignments to be handled while I was out of work on a medical leave of absence, and updated Respondent Golden on the status.

[14]      On April 15, 2019, after my doctor's appointment, I provided Respondent Golden with an update regarding my progress.

[15]      I remained out of work on a medical leave of absence through May 5, 2019.

[16]     While I was out of work on a medical leave of absence, I felt pressure from Respondent Golden to return to work.

[17]     On April 23, 2019, I informed Respondent Golden that, per my doctor, I did not require surgery, and that I will meet with my doctor again on May 3, 2019, at which point I was hoping I would be cleared to return to work.

[18]     On May 3, 2019, at my doctor's appointment, my cast was removed and I was given a removable cast so that I would be able to travel for my upcoming work trip to Amsterdam, for which I was scheduled to depart on May 10, 2019.  My doctor cleared me to return to work from home, as I was still unable to drive as a result of my injury, and cleared me to go on the upcoming work travel to Amsterdam.

[19]     On May 3, 2019, following my doctor's appointment, I informed Respondent Golden that I would be cleared to return to work, beginning May 6, 2019.

[20]     On May 6, 2019, I returned to work, with the accommodation of working from home, and provided my doctor's note to Respondent Golden.

[21]     On May 6, 2019, in a phone call with Respondent Golden, she assigned me a significant number of projects and tasks, and emphasized the amount of work that she had to do while I was out of work on a medical leave of absence.  Respondent Golden told me that I would no longer be traveling to Amsterdam for the scheduled work trip.  The stated reasons were that Respondents did not know when I would be returning to work, and that, with all of the work I was returning to, Respondent Golden figured the trip to Amsterdam would have slipped to the bottom of my priorities.  This is false.  Respondents were aware that I was already cleared to return to work, and was working from home as an accommodation, that I was not restricted from international travel, and that this scheduled trip to Amsterdam was important and related to my

job duties and responsibilities.  I informed Respondent Golden that I was given a removable cast so that I would be able to travel for the scheduled work trip to Amsterdam, and that I was cleared to go on this trip.  Respondent Golden stated that my room in Amsterdam had already been given to someone else.  Before I went out on a medical leave of absence, Respondent Golden had encouraged me to participate in this trip to Amsterdam, and had stressed that it was a great opportunity for me with my client group.

[22]    Respondents cancelled my work trip to Amsterdam because of my disability and/or my seeking accommodations and/or my taking a medical leave of absence for my disability.

[23]    Respondent Golden excluded me from information and communications related to and necessary for me to do my job.

[24]    On May 21, 2019, in a phone call with Respondent Golden, she asked me when I would be returning to work at the office.  I stated that my doctor would likely clear me to return to work at my next appointment in two (2) weeks.  Respondent Golden responded that I "might want to" start working from the office soon.

[25]    On May 24, 2019, in a phone call with Respondent Golden, she unjustly criticized my performance and was hostile and dismissive toward me.  Respondent Golden questioned whether I was "engaged" with my work and assignments.  Respondent Golden instructed me to return to work at the office before my June 3, 2019 doctor's appointment. Respondent Golden stated that only I knew what I was dealing with.  I understood Respondent Golden's comments to be questioning my disability, my commitment to my job, and my need for the accommodation of working from home, and understood her to be instructing me to return to work before I was medically cleared to do so.

[26]     On June 3, 2019, I informed Respondent Golden that I had an orthopedic

doctor appointment that day, had my cast removed, and would be returning to work in the office

the next day.

[27]     On June 4, 2019, I returned to work, at the office, after being cleared by

my doctor to return.

[28]     Respondent Golden treated me differently and worse, and in a more

hostile and dismissive manner, than she treated me before I was injured, sought accommodations

for my disability, and took a medical leave of absence for my disability.

[29]     After I returned to work, Respondent Golden made clear to me that she

expected me to do the work I would have had to do had I not been disabled and/or on a medical

leave of absence for my disability.

[30]     The projects I was assigned upon my return to work did not account for

my medical leave of absence for my disability.

[31]     On July 22, 2019, in a meeting with Respondent Golden, she told me that

she would be giving me a performance expectations memo.

[32]     On July 23, 2019, in a meeting with Respondent Golden and Trina Hendri,

Senior Director, Human Resources, Respondents placed me on a Performance Improvement Plan

("PIP").  My performance did not warrant a PIP.  The stated reason was "performance

deficiencies."  The PIP was the first written documentation that I received indicating my

performance was deficient.  The PIP contained false statements and mischaracterizations.  The

PIP was scheduled to last sixty (60) days, until September 23, 2019.  Respondents skipped the

first, performance expectations memo step in Respondent Company's progressive discipline

process, and instead accelerated the process by placing me on a PIP.

[33]     The stated reason is pretext.

[34]     Respondents placed me on a PIP because of my disability and/or my seeking reasonable accommodations for my disability and/or my taking medical leaves of absence for my disability.

[35]     Respondents shifted their expectations of me and objectives for me and provided me with limited feedback, despite my regularly requesting it.

[36]     Respondents did not assist me in achieving the objectives set forth in the PIP or provide feedback to me on my progress.

[37]     On September 4, 2019, in a meeting with Respondent Golden, I received a negative year-end performance review.  I was given a "does not meet many expectations" rating, a two (2) on a five (5) point scale with one (1) being the worst rating.  My performance did not warrant a negative year-end performance review.  I received only a minimal salary increase and bonus.

[38]     I received a negative year-end performance review and minimal salary increase and bonus because of my disability and/or my seeking accommodations and/or my taking a medical leave of absence for my disability.

[39]     On September 11, 2019, in my written response to my negative year-end performance review, I complained of disability discrimination and retaliation for seeking reasonable accommodations for my disability, including having taken a medical leave of absence.  I complained: "I can only conclude that my negative year-end performance review is because of my recent injury (due to breaking my arm on March 30, 2019), my medical leave of absence from April 10, 2019 to May 5, 2019, and my accommodation of working from home between May 6, 2019 and June 4, 2019."  I complained: "Coupled with the several examples of

being pressured to return to work and go beyond my doctor's recommendations, I am concerned about the retaliation I experienced as a result of my injury and medical leave." I complained: "I do not believe that I would have received a Performance Improvement Plan or a negative year-end performance review if I had not had an injury, been out on medical leave, or requested an accommodation."

[40]     I received no response to my complaints.

[41]     Respondents failed to conduct an investigation into my disability discrimination and retaliation complaints.

[42]     Respondents failed to remedy or prevent the disability discrimination and retaliation to which I was subjected.

[43]     On September 20, 2019, in a meeting with Resch, I complained of disability discrimination and retaliation for seeking reasonable accommodations for my disability, including having taken a medical leave of absence. I complained that it was my belief that I was placed on a PIP and received performance criticisms because of my injury, accommodations, and taking a medical leave of absence. I stated that I had previously received positive reviews and performance feedback, and that I was surprised by the PIP.

[44]     On September 22, 2019, in an email to Resch, I complained of disability discrimination and retaliation for seeking reasonable accommodations for my disability. I provided her with the complaint of disability discrimination and retaliation that I made in response to my negative year-end performance review, and emphasized my commitment to Respondent Company.

[45]     I received no response to my complaints.

[46]     Respondents failed to conduct an investigation into my disability discrimination and retaliation complaints.

[47]     Respondents failed to remedy or prevent the disability discrimination and retaliation to which I was subjected.

[48]     On September 26, 2019, in a meeting with Respondent Golden and Resch, Respondents terminated my employment, effective October 4, 2019.  The stated reason was that I had not made enough progress on my PIP.

[49]     The stated reason is pretext.

[50]     Respondents terminated my employment because of my disability and/or my seeking accommodations and/or my taking a medical leave of absence for my disability and/or my complaints of disability discrimination and retaliation.

[51]     I was provided with no opportunity to remain employed with Respondent Company.

[52]     Respondents were aware that I was continuing to undergo physical therapy for my disability.

[53]     On September 26, 2019, in an email from Respondent Golden to employees at Respondent Company, Respondent Golden stated that it was "with regret that [she] announce that Cindee Porter will be leaving CSL Behring in [my] role as Senior HR Business Partner in Global R&D effective Friday, October 4, 2019."  She stated that my "contributions in Global Safety and Pharmacovigilance, Clinical Operations and the HR community are greatly appreciated," and that Respondents will "miss [my] spirit of collaboration, professionalism, and strong integrity."

[54]     On October 4, 2019, Respondents terminated my employment.

[55]     Respondents have assigned my job duties to nondisabled[1] and/or noncomplaining employees and/or employees who have not requested accommodations.  I was more qualified to perform my job duties than the nondisabled and/or noncomplaining employees and/or employees who have not requested accommodations to whom Respondents assigned my job duties.

[56]     Respondents subjected me to a hostile work environment because of my disability and/or seeking accommodations and/or taking medical leaves of absence for my disability and/or my complaints of disability discrimination and retaliation.

[57]     Respondents terminated my employment because of my disability and/or seeking accommodations and/or taking medical leaves of absence for my disability and/or my complaints of disability discrimination and retaliation.

[58]     On October 17, 2019, I applied for the posted Senior Manager, Talent Development position and sent an email to Kristen Krebs, Hiring Manager, and Drew Lewis, Talent Acquisition, expressing my interest in and qualifications for the position.

[59]     Respondents' disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

[60]     Respondents' comments and conduct evidence a bias against disabled employees and/or employees that seek accommodations and/or employees that take medical leaves of absence for a disability and/or employees that engage in protected activity.

[61]     Respondent Golden aided and abetted Respondent Entities in discriminating against me based on my disability and retaliating against me based on my seeking reasonable accommodations for my disability, including a medical leave of absence, and complaining of disability discrimination and retaliation.

---

[1] References herein to an employee not having a disability are to the best of my knowledge.

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my disability (including history of and regarded as), and retaliated against me for my complaints of disability discrimination and seeking reasonable accommodations for my disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.      The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   **X**          **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):   (a); (d); (e)**

   \_\_\_\_          Section 5.1 Subsection(s) _____

   \_\_\_\_          Section 5.2 Subsection(s) _____

   \_\_\_\_          Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.      Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

   **X**          **This charge will be referred to the EEOC for the purpose of dual filing.**

6.      The Complainant seeks that Respondents be required to:

   (a) Make the Complainant whole.

   (b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## <u>VERIFICATION</u>

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

_10/17/19_
(Date Signed)

(Signature)
Cindee Porter
redacted
Media, PA 19063

Exhibit "B"

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**AMENDED COMPLAINT**

COMPLAINANT:      :

**CINDEE PORTER**      :      Docket No.

v.      :

RESPONDENTS:      :

**CSL BEHRING**      :

and      :

**KIMBERLY GOLDEN, aider and abettor**      :

1. The Complainant herein is:

    Name:    <u>Cindee Porter</u>

    Address:    redacted
            Media, PA 19063

2. The Respondents herein are:

    Names:    <u>CSL Behring ("Respondent Company"); Kimberly Golden, aider and abettor ("Respondent Golden")</u>

    Address:    1020 1st Avenue
            King of Prussia, PA 19406

3. I, <u>Cindee Porter,</u> the Complainant herein, allege that I was subjected to unlawful discrimination because of my disability (including history of and regarded as), and retaliation because I complained of disability discrimination and sought reasonable accommodations for my disability, including taking a medical leave of absence, as set forth below.

### Discrimination and Retaliation

**A.  I specifically allege:**

[1]        I began working at Respondent Company on or about September 5, 2018.

[2]        I consistently performed my job duties in a highly competent manner.

[3]        I last held the position of Senior Human Resources Business Partner, Global Research and Development.

[4]        I reported to Respondent Kimberly Golden, Director, Human Resources Business Partner.  Golden reported to Andrea Resch, Senior Director, Human Resources, Global Research and Development.

[5]        On February 12, 2019, in a meeting with Respondent Golden, I received a positive mid-year performance review

[6]        On March 30, 2019, I fell and broke my right wrist.

[7]        On March 31, 2019, I informed Respondent Golden that I had fallen and broken my right wrist, that I was wearing a brace, and that I was working to schedule an orthopedic doctor appointment.  I requested and was granted the ability to work from home the next day, due to my injury.

[8]        On April 1, 2019, I went to the orthopedic doctor and had my right arm placed in a cast.  I was told that, at my two- (2) week follow-up appointment, the doctor would have a better idea whether I would need to undergo surgery.

[9]        On April 2, 2019, I informed Respondent Golden that my right arm had been placed in a cast.  I requested and was granted the ability to work from home until my April 15, 2019 orthopedic doctor follow-up appointment, due to not being able to drive as a result of my injury.

[10]     I experienced continued physical strain from working and typing with the cast on my right arm, and writing with my left hand, and consulted with my doctor. I repeatedly informed Respondent Golden that I was having difficulties trying to work with the cast on my right arm and with having to write left-handed.

[11]     On April 8, 2019, in a phone call with Respondent Golden, she unjustly criticized my performance and criticized the work I completed and the updates I provided to her. Respondent Golden stated that there had been another employee who had fallen and broken both wrists, had casts, and returned to the office without a problem. I understood Respondent Golden to be implying that I should return to work in the office instead of working from home.

[12]     On April 8, 2019, after speaking with my doctor, I informed Respondent Golden that, due to continued physical strain from working, typing, and writing with my left hand, my doctor would be writing me out of work, on a medical leave of absence, until reevaluation at my April 15, 2019 appointment. I requested and was granted the accommodation of a medical leave of absence.

[13]     On April 9, 2019, after working a half-day, I went out of work on a medical leave of absence. I worked to transition my projects and assignments to be handled while I was out of work on a medical leave of absence, and updated Respondent Golden on the status.

[14]     On April 15, 2019, after my doctor's appointment, I provided Respondent Golden with an update regarding my progress.

[15]     I remained out of work on a medical leave of absence through May 5, 2019.

[16]     While I was out of work on a medical leave of absence, I felt pressure from Respondent Golden to return to work.

[17]     On April 23, 2019, I informed Respondent Golden that, per my doctor, I did not require surgery, and that I will meet with my doctor again on May 3, 2019, at which point I was hoping I would be cleared to return to work.

[18]     On May 3, 2019, at my doctor's appointment, my cast was removed and I was given a removable cast so that I would be able to travel for my upcoming work trip to Amsterdam, for which I was scheduled to depart on May 10, 2019.  My doctor cleared me to return to work from home, as I was still unable to drive as a result of my injury, and cleared me to go on the upcoming work travel to Amsterdam.

[19]     On May 3, 2019, following my doctor's appointment, I informed Respondent Golden that I would be cleared to return to work, beginning May 6, 2019.

[20]     On May 6, 2019, I returned to work, with the accommodation of working from home, and provided my doctor's note to Respondent Golden.

[21]     On May 6, 2019, in a phone call with Respondent Golden, she assigned me a significant number of projects and tasks, and emphasized the amount of work that she had to do while I was out of work on a medical leave of absence.  Respondent Golden told me that I would no longer be traveling to Amsterdam for the scheduled work trip.  The stated reasons were that Respondents did not know when I would be returning to work, and that, with all of the work I was returning to, Respondent Golden figured the trip to Amsterdam would have slipped to the bottom of my priorities.  This is false.  Respondents were aware that I was already cleared to return to work, and was working from home as an accommodation, that I was not restricted from international travel, and that this scheduled trip to Amsterdam was important and related to my

job duties and responsibilities.  I informed Respondent Golden that I was given a removable cast so that I would be able to travel for the scheduled work trip to Amsterdam, and that I was cleared to go on this trip.  Respondent Golden stated that my room in Amsterdam had already been given to someone else.  Before I went out on a medical leave of absence, Respondent Golden had encouraged me to participate in this trip to Amsterdam, and had stressed that it was a great opportunity for me with my client group.

[22]     Respondents cancelled my work trip to Amsterdam because of my disability and/or my seeking accommodations and/or my taking a medical leave of absence for my disability.

[23]     Respondent Golden excluded me from information and communications related to and necessary for me to do my job.

[24]     On May 21, 2019, in a phone call with Respondent Golden, she asked me when I would be returning to work at the office.  I stated that my doctor would likely clear me to return to work at my next appointment in two (2) weeks.  Respondent Golden responded that I "might want to" start working from the office soon.

[25]     On May 24, 2019, in a phone call with Respondent Golden, she unjustly criticized my performance and was hostile and dismissive toward me.  Respondent Golden questioned whether I was "engaged" with my work and assignments.  Respondent Golden instructed me to return to work at the office before my June 3, 2019 doctor's appointment. Respondent Golden stated that only I knew what I was dealing with.  I understood Respondent Golden's comments to be questioning my disability, my commitment to my job, and my need for the accommodation of working from home, and understood her to be instructing me to return to work before I was medically cleared to do so.

[26]     On June 3, 2019, I informed Respondent Golden that I had an orthopedic doctor appointment that day, had my cast removed, and would be returning to work in the office the next day.

[27]     On June 4, 2019, I returned to work, at the office, after being cleared by my doctor to return.

[28]     Respondent Golden treated me differently and worse, and in a more hostile and dismissive manner, than she treated me before I was injured, sought accommodations for my disability, and took a medical leave of absence for my disability.

[29]     After I returned to work, Respondent Golden made clear to me that she expected me to do the work I would have had to do had I not been disabled and/or on a medical leave of absence for my disability.

[30]     The projects I was assigned upon my return to work did not account for my medical leave of absence for my disability.

[31]     On July 22, 2019, in a meeting with Respondent Golden, she told me that she would be giving me a performance expectations memo.

[32]     On July 23, 2019, in a meeting with Respondent Golden and Trina Hendri, Senior Director, Human Resources, Respondents placed me on a Performance Improvement Plan ("PIP"). My performance did not warrant a PIP. The stated reason was "performance deficiencies." The PIP was the first written documentation that I received indicating my performance was deficient. The PIP contained false statements and mischaracterizations. The PIP was scheduled to last sixty (60) days, until September 23, 2019. Respondents skipped the first, performance expectations memo step in Respondent Company's progressive discipline process, and instead accelerated the process by placing me on a PIP.

[33]     The stated reason is pretext.

[34]     Respondents placed me on a PIP because of my disability and/or my seeking reasonable accommodations for my disability and/or my taking medical leaves of absence for my disability.

[35]     Respondents shifted their expectations of me and objectives for me and provided me with limited feedback, despite my regularly requesting it.

[36]     Respondents did not assist me in achieving the objectives set forth in the PIP or provide feedback to me on my progress.

[37]     On September 4, 2019, in a meeting with Respondent Golden, I received a negative year-end performance review.  I was given a "does not meet many expectations" rating, a two (2) on a five (5) point scale with one (1) being the worst rating.  My performance did not warrant a negative year-end performance review.  I received only a minimal salary increase and bonus.

[38]     I received a negative year-end performance review and minimal salary increase and bonus because of my disability and/or my seeking accommodations and/or my taking a medical leave of absence for my disability.

[39]     On September 11, 2019, in my written response to my negative year-end performance review, I complained of disability discrimination and retaliation for seeking reasonable accommodations for my disability, including having taken a medical leave of absence.  I complained: "I can only conclude that my negative year-end performance review is because of my recent injury (due to breaking my arm on March 30, 2019), my medical leave of absence from April 10, 2019 to May 5, 2019, and my accommodation of working from home between May 6, 2019 and June 4, 2019."  I complained: "Coupled with the several examples of

being pressured to return to work and go beyond my doctor's recommendations, I am concerned

about the retaliation I experienced as a result of my injury and medical leave." I complained: "I

do not believe that I would have received a Performance Improvement Plan or a negative year-

end performance review if I had not had an injury, been out on medical leave, or requested an

accommodation."

        [40]      I received no response to my complaints.

        [41]      Respondents failed to conduct an investigation into my disability

discrimination and retaliation complaints.

        [42]      Respondents failed to remedy or prevent the disability discrimination and

retaliation to which I was subjected.

        [43]      On September 20, 2019, in a meeting with Resch, I complained of

disability discrimination and retaliation for seeking reasonable accommodations for my

disability, including having taken a medical leave of absence. I complained that it was my belief

that I was placed on a PIP and received performance criticisms because of my injury,

accommodations, and taking a medical leave of absence. I stated that I had previously received

positive reviews and performance feedback, and that I was surprised by the PIP.

        [44]      On September 22, 2019, in an email to Resch, I complained of disability

discrimination and retaliation for seeking reasonable accommodations for my disability. I

provided her with the complaint of disability discrimination and retaliation that I made in

response to my negative year-end performance review, and emphasized my commitment to

Respondent Company.

        [45]      I received no response to my complaints.

[46]     Respondents failed to conduct an investigation into my disability discrimination and retaliation complaints.

[47]     Respondents failed to remedy or prevent the disability discrimination and retaliation to which I was subjected.

[48]     On September 26, 2019, in a meeting with Respondent Golden and Resch, Respondents terminated my employment, effective October 4, 2019.  The stated reason was that I had not made enough progress on my PIP.

[49]     The stated reason is pretext.

[50]     Respondents terminated my employment because of my disability and/or my seeking accommodations and/or my taking a medical leave of absence for my disability and/or my complaints of disability discrimination and retaliation.

[51]     I was provided with no opportunity to remain employed with Respondent Company.

[52]     Respondents were aware that I was continuing to undergo physical therapy for my disability.

[53]     On September 26, 2019, in an email from Respondent Golden to employees at Respondent Company, Respondent Golden stated that it was "with regret that [she] announce that Cindee Porter will be leaving CSL Behring in [my] role as Senior HR Business Partner in Global R&D effective Friday, October 4, 2019."  She stated that my "contributions in Global Safety and Pharmacovigilance, Clinical Operations and the HR community are greatly appreciated," and that Respondents will "miss [my] spirit of collaboration, professionalism, and strong integrity."

[54]     On October 4, 2019, Respondents terminated my employment.

[55]     Respondents have assigned my job duties to nondisabled[1] and/or noncomplaining employees and/or employees who have not requested accommodations. I was more qualified to perform my job duties than the nondisabled and/or noncomplaining employees and/or employees who have not requested accommodations to whom Respondents assigned my job duties.

[56]     Respondents subjected me to a hostile work environment because of my disability and/or seeking accommodations and/or taking medical leaves of absence for my disability and/or my complaints of disability discrimination and retaliation.

[57]     Respondents terminated my employment because of my disability and/or seeking accommodations and/or taking medical leaves of absence for my disability and/or my complaints of disability discrimination and retaliation.

[58]     On October 17, 2019, I applied for the posted Senior Manager, Talent Development position and sent an email to Kristen Krebs, Hiring Manager, and Drew Lewis, Talent Acquisition, expressing my interest in and qualifications for the position.

[59]     On or about February 7, 2020, I learned that Respondents failed to select me, or even interview me, for the posted Senior Manager, Talent Development position. I was qualified for the position. Instead of selecting me, Respondents selected Erica Brim, an external candidate for the position.

[60]     Respondents failed to select me, or even interview me, for the Senior Manager, Talent Development position because of my disability and/or seeking accommodations and/or taking medical leaves of absence for my disability and/or my complaints of disability discrimination and retaliation.

---

[1] References herein to an employee not having a disability are to the best of my knowledge.

[61]     I was more qualified for the Senior Manager, Talent Development position than the nondisabled, noncomplaining external candidate that was selected for the position instead of me.

[62]     Respondents' disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

[63]     Respondents' comments and conduct evidence a bias against disabled employees and/or employees that seek accommodations and/or employees that take medical leaves of absence for a disability and/or employees that engage in protected activity.

[64]     Respondent Golden aided and abetted Respondent Entities in discriminating against me based on my disability and retaliating against me based on my seeking reasonable accommodations for my disability, including a medical leave of absence, and complaining of disability discrimination and retaliation.

**B.**  Based on the aforementioned, I allege that Respondents have discriminated against me because of my disability (including history of and regarded as), and retaliated against me for my complaints of disability discrimination and seeking reasonable accommodations for my disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

__ X __     **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a); (d); (e)__**

_____  Section 5.1 Subsection(s) _____

_____  Section 5.2 Subsection(s) _____

_____  Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.     Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

   **X**     **This charge will be referred to the EEOC for the purpose of dual
   filing.**

6.     The Complainant seeks that Respondents be required to:

   (a) Make the Complainant whole.

   (b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

   (c) Remedy the discriminatory and retaliatory effect of past practice(s) and
       procedure(s).

   (d) Take further affirmative action necessary and appropriate to remedy the violation
       complained of herein.

   (e) Provide such further relief as the Commission deems necessary and appropriate.

**VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

2/10/2020
(Date Signed)

(Signature)   Cindee Porter
redacted
Media, PA 19063

# Exhibit "C"

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

| To:   Cindee Porter | From:   Philadelphia District Office |
|---|---|
| c/o | 801 Market Street |
| Console Mattiaci Law | Suite 1000 |
| Via email: farrell@consolelaw.com | Philadelphia, PA 19107 |

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Damon A. Johnson, | |
| **17F-2020-60875** | **State, Local & Tribal Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☒   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐   The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Dana R Hutter*

**Dana R. Hutter,**
**Deputy Director**

June 11, 2021
*(Date Issued)*

Enclosures(s)

cc:

| For Respondent: | For Charging Party: |
|---|---|
| CSL BEHRING | Brian C. Farrell, Esq. |
| Emily J. Daher, Esq. | Console Mattiacci Law, LLC |
| Via email: dahere@ballardspahr.com | Via email: farrell@consolelaw.com |